UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Hon. Marianne O. Battani |
| IN RE: SPARK PLUGS<br>IN RE: OXYGEN SENSORS | Case No. 2:15-cv-03001<br>Case No. 2:15-cv-11774<br>Case No. 2:16-cv-13506<br>Case No. 2:15-cv-03101<br>Case No. 2:15-cv-12918<br>Case No. 2:15-cv-11831 |
| THIS DOCUMENT RELATES TO<br>ALL DIRECT PURCHASER ACTIONS | |

**OPINION AND ORDER DENYING DIRECT PURCHASER PLAINTIFFS'
MOTION TO CERTIFY THE COURT'S APRIL 18, 2017
ORDER FOR INTERLOCUTORY APPEAL**

Before the Court is Direct Purchaser Plaintiffs' request that the Court certify for interlocutory appeal its April 18, 2017 Opinion and Order ("Order"), which granted Defendants' motions to dismiss Direct Purchaser Plaintiffs' complaints. (Doc. Nos. 52 in 15-3001; 18 in 16-13506; 43 in 15-11774; 59 in 15-3101; 44 in 15-11831; 40 in 15-12908). The Court has reviewed all the relevant filings and finds oral argument will not aid in the resolution of this dispute. See E. D. Mich. LR 7.1(f)(2). For the reasons that follow, the motion is **DENIED**.

**I. INTRODUCTION AND PROCEDURAL BACKGROUND**

On May 18, 2015, certain of the Direct Purchaser Plaintiffs ("DPPs") filed class action complaints against NGK Spark Plug Co., Ltd., NGK Spark Plugs (U.S.A.), Inc., NGK Spark Plugs (U.S.A.) Holding, Inc., and NTK Technologies, Inc. (collectively,

1

"NGK"), DENSO Corporation, DENSO International America, Inc., and DENSO Products and Services Americas, Inc. (collectively, "DENSO"), and Robert Bosch GmbH and Robert Bosch LLC (collectively, "Bosch"), alleging antitrust violations relating to the sale of Spark Plugs. (Case No. 15-11774, Doc. 1). On May 20, 2015, certain of the DPPs separately filed class action complaints – which were consolidated and merged on October 1, 2015 – against NGK, DENSO, and Bosch, alleging antitrust violations relating to the sale of Oxygen Sensors. (See e.g. Case No. 15-03101, Doc. 11). DPPs claims against NGK arose out of its direct liability arising from its own sales of Spark Plugs and Oxygen Sensors and on its joint and several liability for sales made by Bosch and DENSO. DPPs brought claims against DENSO based on its joint and several liability for purchases of Spark Plugs and Oxygen Sensors from Bosch and NGK. DPPs did not seek damages arising from purchases made directly from DENSO.

Thereafter, Defendants DENSO and NGK asked the Court to either dismiss or stay, pending arbitration, the actions relating to Spark Plugs and Oxygen Sensors on the ground that these matters were subject to arbitration pursuant to the doctrine of equitable estoppel. The Court granted DENSO's motion and dismissed the claims brought against DENSO based on purchases made from Bosch and stayed the claims brought against DENSO based on purchases made from NGK. In addition, the Court granted NGK's motion and dismissed the claims brought against NGK based on purchases made from Bosch or DENSO, and stayed the claims brought against NGK based on purchases made directly from NGK. The basis supporting the Court's determination is summarized below.

2

First, DPPs' claims against DENSO in both the Spark Plugs and Oxygen Sensor cases were premised on DENSO's joint and several liability for the damages alleged to be attributable to purchases from Bosch and NGK.  DPPs did not bring suit against DENSO based on purchases made directly from DENSO.  Therefore, to the extent that DPPs sought to hold DENSO jointly and severally liable for purchases from Bosch, DENSO persuasively argued the claims had to be arbitrated pursuant to the arbitration clause incorporated by reference into the Bosch sales invoices under the doctrine of equitable estoppel.

It is undisputed that every one of the relevant Bosch sales invoices "contained an acknowledgment that the purchase order was subject to the terms and conditions of sale." (See Order at 2).  Further, "[t]he terms and conditions contain an agreement to arbitrate 'all disputes between the parties arising out of or related to this Agreement,' and designate Michigan law as controlling." (Id.)  DENSO's relevant distributor agreements likewise 'contain agreements to arbitrate "[a]ny controversy or claim arising out of or relating to this Agreement,' and designate California law as controlling."  (Id.) Finally, there was no arbitration agreement in the purchase orders executed with NGK. DENSO also successfully argued that DPPs' claims based on purchases from NGK must be stayed pending the outcome of arbitration of the Bosch claims because any damages flowing from NGK's sales were part and parcel of the same alleged conspiracy.

In its analysis, the Court recognized that a nonparty to an agreement may not be bound by its terms absent a recognized exception, and that estoppel was a recognized exception.  AFSCME Council 25 v. Wayne Cty., 811 N.W.2d 4, 11, 12 (Mich. Ct. App.

3

2011) (citing Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)). The Court further recognized that state law governed the availability of estoppel, and that Michigan law governed whether DENSO could enforce the Bosch arbitration agreement as a nonsignatory.

## II. STANDARD OF REVIEW

Interlocutory appeals in the federal system generally are disfavored. Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368 (1981). "Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule." Caterpillar v. Lewis, 519 U.S. 61, 74 (1996). Accordingly, a party seeking an interlocutory appeal has the burden of showing exceptional circumstances exist warranting an interlocutory appeal. W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis (In re City of Memphis), 293 F.3d 345, 350 (6th Cir. 2002); Vitols v. Citizens Banking Co., 984 F.2d 168, 170 (6th Cir. 1993).

> Under the statute:
>
> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C.A. § 1292(b) (West 2006).

### III. ANALYSIS

In support of their motion, Direct Purchaser Plaintiffs assert that the orders granting Defendants' motions to dismiss and stay the actions should be certified for interlocutory appeal because the orders present a controlling question of law for which there is substantial ground for difference of opinion and for which an immediate appeal may materially advance the ultimate termination of this litigation.

Before turning to the merits, the Court addresses NGK's assertion that DPPs' motion is untimely. The request for certification was filed thirty-five days after the Court entered its Order. Numerous courts have held that requests for certification need only be filed within a "reasonable time." See e.g. McKinstry v. Sergent, No. 11-133-ART, 2012 WL 3731304 at *3 (E.D. Ky. Aug. 28, 2012) (quotation omitted). There is no basis to find the amount of time between the entry of the Order and the filing of the motion is unreasonable. Moreover, NGK has suffered no prejudice as a result of the passage of thirty-five days. Therefore, the Court turns its attention to whether DPPs have satisfied the factors needed for the Court to certify an interlocutory appeal.

#### A. Controlling Question of Law

DPPs assert that their request for interlocutory appeal meets the first prong of the test. Under Sixth Circuit authority, a legal issue is controlling if "it could materially affect the outcome of the case." In re City of Memphis, 293 F.3d 345, 351 (6th Cir. 1992) (citations omitted).

According to DPPs, the controlling issue of law is "whether, for purposes of applying equitable estoppel doctrine to allow a co-conspirator nonsignatory of an agreement to enforce an arbitration provision in that agreement, a plaintiff's antitrust claim is 'dependent on and intertwined. . .in a fundamental way' with an arbitration

5

provision simply because the plaintiff's purchases were made through a sales invoice that incorporated the arbitration provision by reference." (DPPs' Brief, Doc. No. 40 in 15-12918 at 1) (citing Order at 15).

Defendants contest DPPs' characterization of the issue as involving a controlling question of law. Defendants contend that the question is fact-based inasmuch as DPPs do not challenge whether the Court applied the proper test. Nor would DPPs challenge the test used by the Court because it applied the more stringent, two-pronged test favored by DPPs. Specifically, the Court held that under Michigan law, a nonsignatory had to show both that the plaintiffs had raised allegations of interdependent and concerted misconduct and that the plaintiffs' claims related to the agreement containing an arbitration clause. (Order at 12). The Court then determined that Defendants satisfied both prongs of the test. First, the claims advanced against DENSO involved substantially interdependent or concerted misconduct between DENSO and Bosch. The Court further determined that the claims relied on or were intertwined with the underlying contracts – that is, the Bosch sales invoices, reasoning that "[a]bsent these Bosch sales invoices, DPPs would have suffered no damages related to purchases made from Bosch." (Order at 15). "Consequently, DPPs' claims are dependent on and intertwined with the Bosch sales invoices in a fundamental way." (Order at 15).

Accordingly, the Court agrees with Defendants: Plaintiffs do not seek immediate review of the Court's ruling that both factors must be established to apply equitable estoppel under Michigan law. They instead seek review of the Court's application of the test to the facts alleged. Therefore, the first factor is not met.

### B. Substantial Ground for Difference of Opinion

Next, DPPs argue that there is substantial ground for difference of opinion regarding the applicability of equitable estoppel to their claims. In the Sixth Circuit, the district courts have interpreted the "substantial ground for difference of opinion. . .regarding the correctness of the decision" as meaning "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." In re Miedzianowski, 13-101, 2013 WL 4436545 (6th Cir. Aug. 20, 2013) (citing City of Dearborn v. Comcast of Mich. III, Inc., No. 08-10156, 2008 WL 5084203, at *3 (E. D. Mich. Nov. 24, 2008).

Here, DPPs argue that the Court acknowledged in its opinion that case law "lacks some clarity," and that there are "no cases within Michigan providing controlling authority." (DPPs' Brief, Doc. No. 40 in 15-12918 at 4) (citing Order at 6, 10). In addition, courts outside the Sixth Circuit have required "allegations of substantially interdependent and concerted misconduct unless there is some meaningful link between that alleged misconduct and the rights and obligations of the underlying agreement" to apply equitable estoppel. (DPPs' Brief, Doc. No. 40 in 15-12918 at 5). DPPs argue that this Court's Order stands alone in applying equitable estoppel given the reliance on a standard sales invoice which merely incorporates an arbitration provision by reference.

The Court nevertheless finds that DPPs have not satisfied their burden relative to the second requirement. This Court conducted a thorough review of the case law and determined that the proper test for the application of estoppel requires "both that the

7

nonsignatory being compelled to arbitrate has a close relationship with one of the signatories and that the claims raised by the plaintiffs are related to the agreement containing an arbitration clause." (Order at 12, citing Thomas v. Right Choice Staffing Group, LLC, No. 15-10055, 2015 U.S. Dist. LEXIS 87073, at *18-19 (E.D. Mich. July 6, 2015); Southerland v. Corp. Transit of Am., No. 13-14462, 2014 U.S. Dist. LEXIS 138117, at *5 (E.D. Mich. Sept. 20, 2014)). DPPs did not cite any case law demonstrating that the Michigan test for equitable estoppel is not met under the facts and circumstances presented here. Previous decisions provided sufficient guidance.

The Court is not persuaded to the contrary by authority from other circuits interpreting the law of other states. Here, Michigan law is controlling.

### C. Advancement of the Ultimate Termination of the Litigation

Lastly, the Court finds DPPs have failed to satisfy the third requirement under § 1292(b)--an immediate appeal from the order may materially advance the ultimate termination of the litigation. The moving party meets this requirement when the resolution of a controlling legal question not only may avoid trial, but also when the resolution would "otherwise substantially shorten the litigation." The Clark Constr. Group, Inc. v. Allglass Sys., Inc., No. Civ. A. DKC 2002-1590, 2005 WL 736606, at *4 (D. Md. March 30, 2005) (citing 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930, at 432 (2nd ed.1996)).

DPPs contend that absent interlocutory review, they would have to arbitrate their claims based on purchases from DENSO and Bosch and then return to Court to litigate their claim based on purchases from NGK. If the Court's order on equitable estoppel were reversed, the resources dedicated to arbitration would be wasted. Moreover, DENSO and Bosch are defendants or alleged co-conspirators in many cases.

8

The Court disagrees that arbitration would waste time or money. In this case, DPPs must pursue their claims against DENSO arising out of direct purchases through arbitration. The arbitration would likely resolve any claims against DENSO based on joint and several liability, and will do so in an expeditious manner. An interlocutory appeal will only delay the resolution of those claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** DPPs' motion.

**IT IS SO ORDERED.**

Date:   September 12, 2017            s/Marianne O. Battani
                                      MARIANNE O. BATTANI
                                      United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 12, 2017.

                                      s/ Kay Doaks
                                      Case Manager